# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

TONY ONTIA BROWN,

     Plaintiff

v.

TIMOTHY FILSON, et. al.,

     Defendants

Case No.: 3:17-cv-00425-RCJ-WGC

**Report & Recommendation of
United States Magistrate Judge**

Re: ECF Nos. 20, 29

     This Report and Recommendation is made to the Honorable Robert C. Jones, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

     Before the court is Defendant Carpenter's Motion for Summary Judgment. (ECF Nos. 20, 20-1 to 20-6, 22-1, 22-2.) Also before the court is Plaintiff's Motion for Summary Judgment. (ECF No. 29.) Defendant filed a response. (ECF Nos. 31, 31-1 to 31-2.) Plaintiff filed a reply. (ECF No. 34.)

     After a thorough review, it is recommended that Carpenter's and Plaintiff's motions be denied.

## I. BACKGROUND

     Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Am. Compl., ECF No. 7.) The events giving rise to this action took place while Plaintiff was housed at Ely State Prison (ESP). (*Id.*)

On screening the amended complaint, Plaintiff was allowed to proceed with a single Eighth Amendment deliberate indifference to serious medical need claim against Nursing Director Carpenter  based on the delay/denial of dental care. Plaintiff alleges that on June 10, 2015, officers searched Plaintiff's cell and accidentally took and lost his dentures. He sent several kites, and defendant Carpenter responded to his kite on June 26, 2015, stating that he was on the list for dental, and if they did not hire a dentist soon it may be necessary for him to go outside the prison to see a dentist. Plaintiff continued to submit kites about getting replacement dentures, but was without dentures for two years, during which time he was not prescribed a soft diet, and had difficulty eating. (ECF No. 8.)

Carpenter argues that she is entitled to summary judgment because she was not deliberately indifferent to Plaintiff's dental needs, and she is entitled to qualified immunity. Plaintiff argues that Carpenter knew Plaintiff was without his dentures and suffering, yet did nothing to provide him with dental care.

## II. LEGAL STANDARD

The legal standard governing this motion is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id.* at 248 (disputes over facts that might affect the outcome will preclude summary judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the

other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477 U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that one party must prevail as a matter of law"). In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate

an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475 U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

### III. DISCUSSION

**A. Eighth Amendment Deliberate Indifference**

**1. Standard**

A prisoner can establish an Eighth Amendment violation arising from deficient medical care if he can prove that prison officials were deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A claim for deliberate indifference involves the examination of two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *rev'd on other grounds, WMX Tech, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997); *see also*

4

*Akhtar v. Mesa*, 698 F.3d 1202, 1213 (9th Cir. 2012) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)). "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin*, 974 F.2d at 1059 (citing *Estelle*, 429 U.S. at 104); *see also Akhtar*, 698 F.3d at 1213. Examples of conditions that are "serious" in nature include "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *McGuckin*, 974 F.2d at 1059-60; *see also Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (citation omitted) (finding that inmate whose jaw was broken and mouth was wired shut for several months demonstrated a serious medical need).

If the medical need is "serious," the plaintiff must show that the defendant acted with deliberate indifference to that need. *Estelle*, 429 U.S. at 104; *Akhtar*, 698 F.3d at 1213 (citation omitted). "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). Deliberate indifference entails something more than medical malpractice or even gross negligence. *Id*. Inadvertence, by itself, is insufficient to establish a cause of action under section 1983. *McGuckin*, 974 F.2d at 1060. Instead, deliberate indifference is only present when a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Akhtar*, 698 F.3d at 1213 (citation omitted).

Deliberate indifference exists when a prison official "den[ies], delay[s] or intentionally interfere[s] with medical treatment, or it may be shown by the way in which prison officials provide medical care." *Crowley v. Bannister*, 734 F.3d 967, 978 (9th Cir. 2013) (internal

quotation marks and citation omitted). Where delay in receiving medical treatment is alleged, a prisoner must demonstrate that the delay led to further injury. *McGuckin*, 974 F.2d at 1060.

### 2. Summary of Argument & Evidence

According to Carpenter, Plaintiff's housing unit at ESP was subject to an institutional "shakedown," and Plaintiff alleges that when the search was over his dentures were taken or lost by prison staff. She states that NDOC's records do not reflect that Plaintiff's dentures were taken during the "shakedown" (ECF No. 20-1), and Plaintiff's inmate request form (referred to as a "kite") actually suggests that the dentures were accidentally flushed down the toilet, or were lost or misplaced. In any event, Carpenter responded to the kite by telling Plaintiff: "You are on the list for dental. If we don't hire a dentist soon it may be necessary for you to go out," indicating he would have to be seen by an outside dentist. Plaintiff submitted a third kite regarding his dentures, and was told that his denture molds at ESP were no longer current, and that the normal process to finish dentures was six months. (ECF No. 20-2.)

Plaintiff claims that while he was without his dentures there was no attempt to prescribe a medical "soft diet" as a temporary solution, or to have him seen by an outside dentist; however, NDOC records indicate that Plaintiff was placed on a soft diet approximately 70 days after his dentures became lost or misplaced (on August 27, 2015). (ECF No. 22-1.) In addition, during those 70 days, Plaintiff obtained items from the prison canteen including pork rinds, potato chips, sour fruit balls and root beer barrels (a hard candy), as well as chunky peanut butter that Carpenter contends contradict his claim that he had difficulty eating. (ECF No. 20-3 at 4-5.)

Carpenter states that after unforeseen and uncontrollable delays, Plaintiff received a new set of dentures at no charge. (ECF No. 22-2.)

Carpenter admits that she was aware of Plaintiff's denture issue, but she placed Plaintiff on the list to be seen by dental and acknowledged that if a dentist was not hired soon at ESP, that Plaintiff "*may*" have to go to outside dental care. In addition, she contends that once he was placed on a mechanical soft diet, he was being treated for his needs. She also argues that any delay in his receiving new dentures was not her fault, and she is not a doctor or dentist and would not make the final decision regarding when to see a medical provider or for him to see a dental specialist.

Plaintiff states that his cell was searched on June 10, 2015, and when he returned to his cell his property was in disarray and he noticed his dentures were misplaced. The officers told him to search his room, and to write it up if he could not find them. Plaintiff admits he got angry and started throwing things in the toilet, and then realized later he could have flushed his dentures down the toilet. He had the dentures for only a year, so he contends the molds they had should have still been good, but Carpenter did not look at his whole dental chart. Plaintiff states that he wrote kites about his dentures for over two years, and that Carpenter's name is all over his paperwork, and she responded to his grievances and authorized his medical diet. He states that she was well aware of his pain and suffering. He contends that the only reason he was given a medical diet is because Cook Dean Shaw saw how hard it was for him to eat. He also contends that most of the food items he ordered from the canteen could be made softer by water, and when a person is hungry enough you will be surprised by what that person will try to eat, but that does not mean he is not suffering.

In her response to Plaintiff's motion, Carpenter argues that Plaintiff did not suffer from a serious medical need because while Plaintiff claims he suffered painful gums and difficulty eating, his canteen records prove he had no difficulty eating. She contends that Plaintiff weighs

190 pounds and is six feet tall, and so is on the verge of being considered overweight; therefore, his nutritional needs have been met. (ECF Nos. 31-1, 31-2.) Carpenter also argues that she did not personally participate in any alleged constitutional violation. She points out that she approved his medical diet on the same day it was requested by the physician, which she says demonstrates she was not indifferent to Plaintiff's discomfort. She contends that the fact that her name appears on medical kites and grievances does not give rise to liability.

The kites and dental records submitted reflect the following:

On June 12, 2015, Plaintiff sent a kite stating that there was recently a shakedown in the unit and his dentures were taken by accident and now are lost or misplaced, and he needed them to eat. Carpenter told him in response on June 26, 2015: "You are on the list for dental. If we don't hire a dentist soon it may be necessary for you to go out." (ECF No. 20-2 at 16; ECF No. 29 at 12.)

Plaintiff sent a second kite on June 19, 2015, writing again about his dentures, but this time he said they were accidentally flushed down the toilet, and he was left with no way to eat. Carpenter responded on June 26, 2015, referring to the June 12, 2015 kite. (ECF No. 20-2 at 15; ECF No. 29 at 13.)

On June 28, 2015, Plaintiff sent a kite stating that he recently lost his dentures and did not have any teeth to eat with. He received a response that they no longer had his mold, but he would be put on the schedule to see a dentist, although they did not have one available at that time. (ECF No. 20-2 at 13; ECF No. 29 at 14.)

There is a memorandum from Carpenter dated July 23, 2015, regarding dental transport and dental care, stating that arrangements were being made to transport Plaintiff to another NDOC prison for dental care. (ECF No. 29 at 26.)

On August 24, 2015, Plaintiff sent a kite asking about the procedure to get his dentures back to eat. In response he was told that they did not have a dentist at ESP to finish his dentures, and that the normal process was six months. He was told to kite to be seen at another prison to have his dentures re-done. He was also told he would have to start over because they molds they had would not match his mouth at that time. (ECF No. 20-2 at 14; ECF No. 29 at 15.)

There is a medical mechanical soft diet order form, signed by Dr. Michael Koehn, and approved by defendant Carpenter on August 27, 2015. (ECF No. 22-1.)

Plaintiff sent another kite on September 11, 2015, asking about his dentures, and was told that they would try to make his old mold work or take new impressions when they got a new dentist, which would be "very soon." (ECF No. 20-2 at 12; ECF No. 29 at 16.) He sent another kite on October 6, 2015, asking what the timetable was for getting a new dentist, and stating that he needed dentures. He was told that the new dentist was not at ESP. (ECF No. 20-2 at 11; ECF No. 29 at 17.) He sent his next kite on October 23, 2015, asking about his dentures. He was told that he would have to be rescheduled to do his molds. (ECF No. 20-2 at 10; ECF No. 29 at 18.) On November 4, 2015, he asked about the molds for his mouth and whether there was a dentist available. He was told he had been scheduled to see the dentist and would be seen in the order that his original kite was received, but the list was very long. (ECF No. 20-2 at 9; ECF No. 29 at 19.) On December 17, 2015, he reported that it had been more than a year since he had been without his dentures, and it was hard for him to eat. He was again told that he was scheduled, but the list was long. (ECF No. 20-2 at 8; ECF No. 29 at 20.)

Plaintiff sent another kite on May 18, 2016, asking for an update on his dentures. The response states: "should of received them on 5-20-16." (ECF No. 20-2 at 7.) On June 1, 2016, he asked about the long delay to see a dentist, and he was told he was on the list. (ECF No. 20-2 at

6; ECF No. 29 at 21.) On June 28, 2016, Plaintiff said he was called on June 10, 2016, but had not heard anything, and noted that others had received dentures who had just gotten to ESP. (ECF No. 20-2 at 5; ECF No. 29 at 22.) He was again told he was scheduled, but the list was long. (*Id.*)

On August 24, 2016, he said that it had been more than 90-days since he had molds done, but he still had not received his dentures. He was told he had been scheduled to see the dentist, but the list was long. (ECF No. 20-2 at 4; ECF No. 29 at 23.) There is a prescription for dentures for the dental laboratory dated October 7, 2016. (ECF No. 22-2 at 2.) On December 8, 2016, he said that he had not heard anything about his dentures, noting that it had been two years during which he had a lot of discomfort. He was told that they would call him to dental when the dentures were ready. (ECF No. 20-2 at 3.)

There is a receipt for a prosthetic/medical device indicating Plaintiff received upper and lower dentures at ESP on February 3, 2017. (ECF No. 22-2 at 2-3.)

Plaintiff had submitted an informal level grievance on December 27, 2016, about the lack of dental care at ESP, stating that he was waiting for dentures for a long period of time and was forced to eat unhealthy food and endure gum swelling and bleeding. (ECF No. 29 at 37-38.) The grievance was assigned to S. Mattinson, who responded on February 6, 2017, that there was nothing she could do for anything that dated back to 2015, and in speaking to dental they had his dentures, but had to be fitted to him via an appointment. He was told that dental emergencies always supersede non-emergency appointments, and that if he had not been fitted yet, it should occur "really soon." (ECF No. 29 at 39.) Plaintiff sent a first level grievance, stating he felt he should be compensated for his pain. (*Id.* at 40-41.) Carpenter was assigned to the first level grievance, and responded on March 24, 2017, that she agreed with the response to the informal

level grievance. (*Id.* at 42.) He filed a second level grievance, stating that he suffered for two years. (*Id*. at 43-44.) Carpenter responded on May 3, 2017, with an improper grievance memorandum stating that the grievance was untimely. (*Id.* at 45.)

### 3. Analysis

Preliminarily, there is a genuine dispute of material fact as to whether Plaintiff suffered from a serious medical need. Carpenter points out that while Plaintiff claims he had difficulty eating and had gum pain, he ordered items from the canteen that would tend to contradict those claims. Plaintiff, on the other hand, says those items could be softened by water, and just because he ordered the items does not mean he ate them, as sometimes prisoners help each other out. Furthermore, Carpenter makes several references to the purchase of  hard candy; however, hard candy can be sucked on instead of chewed.

Moreover, there is a genuine dispute of material fact as to whether Carpenter was deliberately indifferent to Plaintiff's dental needs. Carpenter knew as of Plaintiff's June 12, 2015 kite that he did not have his dentures. How he lost them is immaterial. She told him he was on the list to see a dentist, though ESP did not have one, and if one was not hired soon, it may be necessary for him to be seen by a dentist outside the prison system. He sent two more kites in June of 2015, and he was told he was on the schedule, but there was no dentist available. Plaintiff provides a memorandum that Carpenter sent to him on July 23, 2015, stating that arrangements were being made to transport Plaintiff to another prison for dental care; however, Plaintiff was never transferred out for dental care. Carpenter does not address this memorandum, or why Plaintiff was not transferred to another prison for dental care. Carpenter knew that Plaintiff was still without his dentures when she approved his mechanical soft diet over a month later. Yet, Plaintiff continued to kite about not seeing a dentist or getting new dentures. He did

1  not receive his dentures until February 3, 2017, over a year and a half after Carpenter responded

2  to his first kite about his dentures.

3      "'Dental care is one of the most important medical needs of inmates.'" *Hunt v. Dental

4  *Dep't.*, 865 F.2d 198, 200 (9th Cir. 1989) (quoting *Ramos v. Lamm*, 639 F.2d 559, 576 (9th Cir.

5  1980)). It has long been established that the "[E]ighth [A]mendment requires that prisoners be

6  provided with a system of *ready access* to adequate dental care." *Id.* (emphasis added) (citing

7  *Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir. 1982)). While a "delay in providing a prisoner

8  with dental treatment, standing alone, does not constitute an [E]ighth [A]mendment violation,"

9  *Hunt* held where there is evidence that the failure to provide dental treatment resulted in harm or

10  the unnecessary and wanton infliction of pain, it is actionable under the Eighth Amendment. *See

11  id.* at 198 (issue of fact existed where inmate alleged the loss of dentures was causing him severe

12  pain and permanent physical damage).

13      It may not have been Carpenter's fault that there was no dentist at ESP, but she was aware

14  of Plaintiff not having his dentures and acknowledged in June of 2015 that if ESP did not get a

15  dentist soon he may have to be seen by a dentist outside of the prison system. She even advised

16  him the next month that arrangements were being made to have him transferred to another

17  NDOC facility for dental care, but that never came to fruition. While Carpenter did approve a

18  prescribed medical soft diet in August of 2015, Plaintiff maintains that he still suffered in pain

19  and had difficulty eating. Carpenter contends that this is contradicted by his canteen purchases,

20  but Plaintiff provides an explanation for his canteen purchases, that if believed, would support

21  his claim that he still suffered due to the lack of dental care. Moreover, Plaintiff's kites and

22  grievance include complaints that it was hard for him to eat, that he had discomfort, and that he

23  endured gum swelling and bleeding. Thus, there is a genuine dispute of material fact as to

whether Carpenter was deliberately indifferent, even though she approved the medical diet, when she did not follow through on the plan to have Plaintiff transferred to another facility to receive dental care and Plaintiff did not receive his dentures until February of 2017.

**B. Qualified Immunity**

The qualified immunity analysis consists of two steps: (1) viewing the facts in the light most favorable to the plaintiff, did the defendant violate the plaintiff's rights; and (2) was the right clearly established at the time the defendant acted. *See Castro v. County of Los Angeles*, 833 F.3d 1060, 1066 (9th Cir. 2016) (en banc), *cert. denied*, 137 S.Ct. 831 (Jan. 23, 2017).

Carpenter argues that she is entitled to qualified immunity because the rights at issue were not clearly established. She states that there is no pre-2017 law that established inmates are entitled to unlimited and unrestricted access to dental care. In addition, she asserts that the applicable NDOC and NNCC rules and regulations concerning inmate sick call and dental appointments have not been found to be unconstitutional, so Carpenter could have reasonably believed that subjecting Plaintiff to these rules was lawful. She states that she was not on notice she violated his rights when she told Plaintiff he was on the list for dental, and that if ESP did not hire a dentist soon it might be necessary for him to go to an outside dentist.

Carpenter ignores the holding of *Hunt* in 1989 that the Eighth Amendment "requires that prisoners be provided with a system of ready access to adequate dental care" and that a delay or failure to provide dental treatment is actionable under the Eighth Amendment where it results in further harm. *See Hunt*, 865 F.2d at 198, 200 (citations omitted). Therefore, Carpenter is not entitled to qualified immunity, and both motions for summary judgment should be denied.

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **DENYING**

Carpenter's (ECF No. 20) and Plaintiff's (ECF No. 29) motions for summary judgment.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: June 25, 2020

_____
William G. Cobb
United States Magistrate Judge

14